**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

January 10, 2019

LETTER TO COUNSEL

RE: *Sultision O. v. Commissioner, Social Security Administration*;[1]
Civil No. SAG-18-611

Dear Counsel:

On February 28, 2018, Plaintiff Sultision O. petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). ECF 1. I have considered the parties' cross-motions for summary judgment. ECF 16, 19. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the judgment of the SSA, and remand the case to the SSA for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed his claim for SSI on March 18, 2014, and he applied for DIB on June 2, 2014, alleging a disability onset date of February 25, 2013. Tr. 245-54. His claims were denied initially and on reconsideration. Tr. 176-83, 188-91. A hearing was held on January 31, 2017, before an Administrative Law Judge ("ALJ"). Tr. 42-87. Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 10-36. The Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Plaintiff suffered from the severe impairments of "HIV/AIDS, degenerative disc disease, osteoarthritis, affective disorder, [and] substance abuse disorder." Tr. 12. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours in an 8 hour day, standing and/or walking four hours in an 8 hour day, and

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

can push/pull as much as much [sic] as can be lifted and/or carried; occasionally reaching overhead bilaterally; climbing ramps and stairs occasionally, and occasionally balancing, stooping, kneeling, crouching, or crawling, and never climbing ladders, ropes, or scaffolds; never working at unprotected heights or in proximity to moving mechanical parts; and after 30 minutes of standing and/or walking, the claimant must be able to sit for approximately one or two minutes and after 30 minutes of sitting must be able to stand for approximately one or two minutes, but would remain on task in these maneuvers; and requires a cane for prolonged ambulation, defined as greater than 25 feet. The claimant is limited to performing work involving simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); using judgment limited to simple, work-related decisions; with few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; with no contact with the general public, occasionally interacting with supervisors, and occasional contact with coworkers but performing no tandem tasks or team activities.

Tr. 15-16. After considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. Tr. 25-28.

In support of his appeal, Plaintiff essentially presents two arguments: (1) that the ALJ improperly evaluated Plaintiff's compliance with treatment and Plaintiff's history of substance abuse, ECF 16-2 at 21-25; and (2) that the ALJ erred in evaluating the medical opinion evidence, ECF 16-2 at 15-21. Although Plaintiff's second argument lacks merit, I agree that the ALJ improperly evaluated Plaintiff's compliance with treatment and his history of substance abuse.

Beginning with the successful argument, Plaintiff argues that "the record does not support the ALJ's assertion of noncompliance regarding Plaintiff's mental impairments, and [the ALJ] has Agency policy *exactly wrong* when she states that finding Plaintiff disabled despite his substance abuse history would be improper." ECF 16-2 at 21. I agree that the ALJ improperly assesses Plaintiff's credibility without evaluating the reasons for his noncompliance or the materiality of his substance abuse. In her RFC assessment, the ALJ found, "[t]o credit the [Plaintiff's] arguments would direct a finding of disability due to willful treatment noncompliance and/or substance abuse, thus precluding payment of disability benefits." Tr. 22. This finding is problematic for two reasons.

First, while there is evidence that Plaintiff was noncompliant with his psychiatric medications prior to his intake into psychiatric wards, Tr. 21, 762, 943, the ALJ also cited to records showing Plaintiff "did not return to the Dennis Ave., Health Center until May 2016, when the claimant described treatment barriers due to insurance issues while alleging that he followed closely with primary care for HIV." Tr. 20, 1100 (intake comment stating "Returning due to losing

2

insurance due to lagal [sic] paperwork issues. Has been living in shelter for 15 months due to 'depression and family.'"). At his hearing, in response to a question from the ALJ regarding treatment for his back, Plaintiff stated that he had not had insurance for a year. Tr. 60. Despite acknowledging that Plaintiff faced insurance issues, the ALJ did not discuss any financial limitations these issues may have had on Plaintiff's ability to maintain current prescriptions for his medications. Notably, inability to pay for prescribed treatment is listed as a justifiable cause for failing to follow prescribed treatment in the SSA's guidance documents. SSR 82-59, 1982 WL 31384 (S.S.A. Jan. 1, 1982).[2] Furthermore, SSR 82-59 directs that, "The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal." Here, the ALJ noted that Plaintiff's "[a]llegations as to medication compliance are not consistent with the claimant's longitudinal records, indicating that the therapeutic response was self-limited." Tr. 21. While the ALJ also noted "inconsistencies relating to treatment barriers," stemming from Plaintiff's attendance at medical appointments, his off-and-on insurance coverage, and his residing in private housing, Tr. 18, the ALJ does not consider whether this alleged "self-limited" noncompliance was a result of Plaintiff's inability to pay or some other specific reason, nor does the hearing transcript reflect any detailed questioning by the ALJ to identify and clarify reasons for Plaintiff's non-compliance. Tr. 15-25, 42-87. Thus, on remand, the ALJ should consider whether Plaintiff's reasons for failing to follow his prescribed treatment were justifiable, and should seek additional details from Plaintiff regarding his financial resources, if necessary.

Second, despite finding "not inaccurate *per se*," Plaintiff's symptoms and references to "a history of sexual and physical assault . . . depression, hopelessness, anxiety, poor memory, poor concentration, panic attacks, anhedonia, nightmares, isolation, and avoidance of crowds with examination findings to include depressed mood, anxious and tearful affect, poor insight and judgment, and poor impulse control," the ALJ flatly discounted the Plaintiff's arguments because "[t]o credit the [Plaintiff's] arguments would direct a finding of disability due to willful treatment noncompliance and/or substance abuse, thus precluding payment of disability benefits." Tr. 22. This finding belies proper consideration of Plaintiff's substance abuse. A drug addiction and alcoholism ("DAA") evaluation process is required when determining whether DAA is "material" to the finding of disability. SSR 13-2p, 2013 WL 621536, at * 5 (Feb. 20, 2013) (explaining the six-step process that adjudicators must follow when determining materiality of DAA). Importantly, if the claimant is found to have DAA, the next step in the evaluation process is to determine if the claimant is disabled considering all of his impairments, including the DAA. 2013 WL 621536, at *2; 20 C.F.R. §§ 404.1535, 416.935. Here, the ALJ determined that Plaintiff suffered from the severe impairment of substance abuse disorder. Tr. 12. However, even considering the evidence of drug use and dependence, the ALJ did not undertake the DAA

---

[2] While SSR 82-59 was rescinded and replaced by SSR 18-3p, effective October 29, 2018, SSR 82-59 was in effect in this case because the ALJ issued her decision on May 5, 2017.

3

evaluation process, and found that Plaintiff was not disabled. Tr. 28. Unfortunately, because of the ALJ's ambiguous statement regarding preclusion of disability benefits "due to noncompliance and/or substance abuse," it is unclear whether the ALJ's disability decision turned on Plaintiff's alleged drug use. Tr. 22. Indeed, the SSA concedes that the "ALJ was less than ideally clear when she stated" the above quoted language. ECF 19-1 at 15. Furthermore, this error was not harmless, because it is unclear whether the ALJ based her ultimate finding of "not disabled" on Plaintiff's substance abuse. Remand is therefore warranted. In so holding, I make no finding as to whether or not the ALJ's ultimate finding that Plaintiff was not disabled was correct or incorrect.

Plaintiff's remaining argument is less persuasive. Plaintiff argues that the ALJ improperly evaluated the results of Plaintiff's consultative examinations with Drs. Shakuntala Dhir and Mikhael Taller. ECF 16-2 at 15-21. The RFC determination is an issue ultimately reserved for the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c). An ALJ must base the RFC analysis "on all of the relevant medical and other evidence," 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3), and must assign weight to any relevant medical opinions, 20 C.F.R. §§ 404.1527(c), 416.927(c). However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, Civil Case No. CCB-13-2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014). The ALJ in this case cited extensively to Plaintiff's medical history in the RFC analysis. Tr. 15-24. She thoroughly considered these consultative examinations and assigned "great weight" to their conclusions. Tr. 22-23. For example, the ALJ cited Dr. Dhir's examination from October, 2014, revealing Plaintiff's "euthymic" mood, "with broad range affect, stable emotional reactions, and no hallucinations, but with absent capacity for abstract thought and poor social interaction." *Id.* The ALJ also cited Dr. Taller's March, 2015 examination, revealing Plaintiff's "intermittent" depression, denial of "any history of suicide attempt, substance abuse, substance abuse treatment, attendance at 12 step meetings, paranoia, hallucinations, panic attacks, or any history of psychiatric hospitalization," and noting that Plaintiff was "alert and oriented with normal motor activity but malodorous and poorly dressed and groomed." Tr. 23. At both consultative examinations, Plaintiff scored a 23 out of a possible 30 points on mini mental status examinations. *Id.* Accordingly, the ALJ noted that these consultative examination findings were "not inconsistent with [Plaintiff's] mental health records and receive great weight." *Id.*

Plaintiff also argues that the ALJ assigned inadequate weight to the opinions of two treating sources, Psychiatric Mental Health Nurse Practitioner Agevie Ejigu ("PMHNP Ejigu"), and Certified Registered Nurse Practitioner Nancy Hartman ("NP Hartman"). ECF 16-2 at 15-21. A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically accepted clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record. *See Craig*, 76 F.3d at 590 (4th Cir. 1996); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig*, 76 F.3d at 590. If the ALJ does not give a treating

source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as: the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Here, the ALJ accorded "little weight" to PMHNP Ejigu's conclusions identifying marked limitations in Plaintiff's daily activities, concentration, persistence, or pace, and self-care with: "paranoid thinking, difficulty concentrating or thinking, poor memory, decreased energy, generalized persistent anxiety, vigilance and scanning, anhedonia, sleep disturbance, reduced energy, isolation, feelings of guilt, and recurrent and intrusive recollections of trauma" and increased back pain due to anxiety and stress. Tr. 23. The ALJ noted that these conclusions were inconsistent with other evidence in the record, including the Plaintiff's ability to read a bus schedule, use public transportation, use his phone for information, and manage his medication. *Id.* The ALJ also discounted NP Hartman's opinion because it "did not address more recent examinations, the improvement with limited physical therapy, and daily activities to include prolonged walking," but the ALJ credited NP Hartman "in finding a requirement for a cane and a need to adjust positions for discomfort." Tr. 24.

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Even if there is other evidence that may support Plaintiff's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *Snyder v. Ribicoff*, 307 F.2d 518, 529 (4th Cir. 1962)). In light of the evidence the ALJ cited regarding the consultative examiners and Plaintiff's treating sources, I must affirm the ALJ's respective assignment of weight to each source.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF 18, is DENIED and Defendant's Motion for Summary Judgment, ECF 23, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED IN PART due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                Sincerely yours,

                /s/

                Stephanie A. Gallagher
                United States Magistrate Judge